**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 25-2389**

OLEKSII BOHATIKOV,

        Petitioner - Appellee,

    v.

YEVHENIIA BOHATIKOVA,

        Respondent - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte. Max O. Cogburn, Jr., District Judge. (3:25-cv-00182-MOC-SCR)

Submitted: February 6, 2026               Decided: March 4, 2026

Before HARRIS and RICHARDSON, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Yevheniia Bohatikova, Appellant Pro Se. Katherine Emiko Coyle, Baltimore, Maryland, Stephen John Cullen, Kelly Ann Powers, Washington, D.C., James A. Sullivan, Jr., MILES & STOCKBRIDGE PC, North Bethesda, Maryland; Brione Berneche Pattison, TOUCHSTONE FAMILY LAW, Charlotte, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Yevheniia Bohatikova ("Mother") appeals the district court's order granting Oleksii Bohatikov's ("Father") petition to return two of their children to Wales from the United States under the Hague Convention on the Civil Aspects of International Child Abduction, ("Hague Convention"), Oct. 25, 1980, T.I.A.S. No. 11670, S. Treaty Doc. No. 99-11 (Treaty Doc.), and the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001-9011.  The district court found that the children were habitual residents of Wales immediately before Mother removed them to the United States.  The district court also found that Mother did not establish by clear and convincing evidence that the children would be placed in grave risk of harm if returned to Wales.  On appeal, Mother challenges the district court's habitual residence finding and the rejection of her grave risk defense.  She also faults the district court for not considering the well-settled defense.  For the reasons stated below, we reject Mother's contentions of error and affirm.

We begin with Mother's challenge to the district court's habitual residence finding.  Mother argues that the district court should have found that the children's habitual residence was the United States.[1]  A child's habitual residence is a mixed question of law and fact.  *Monasky v. Taglieri*, 589 U.S. 68, 84 (2020).  "The inquiry begins with a legal question: What is the appropriate standard for habitual residence?"  *Id.*  "Once the trial court correctly identifies the governing totality-of-the-circumstances standard, however,

---

[1] Mother seems to abandon this argument in her informal reply brief.  But giving her the benefit of the doubt, we review the merits of the issue.

2

what remains for the court to do in applying that standard . . . is to answer a factual question: Was the child at home in the particular country at issue?" *Id.* "The habitual-residence determination thus presents a task for factfinding courts, not appellate courts, and should be judged on appeal by a clear-error review standard deferential to the factfinding court." *Id.* Notably, a child's habitual residence is "[t]he place where a child is at home, *at the time of removal*." *Id.* at 77 (emphasis added).

Contrary to Mother's argument on appeal, the children's habitual residence cannot be the United States because Mother relocated the children here after she removed them from Wales. *See id.* Moreover, we conclude that the district court applied the correct legal standard and did not clearly err in finding that the children's habitual residence was Wales at the time that Mother removed the children to the United States.

Mother next contends that the district court erred in rejecting her grave risk defense. She mainly argues that the district court did not adequately consider that the children's United Kingdom visas have expired and that the children's immigration documents have been lost, so they cannot obtain new United Kingdom visas. Mother thus fears that she and the children will be forced to return to the United Kingdom without the required documents and will be stopped by immigration authorities, separated at the border, and placed in detention.

The Hague Convention "provides that return [of a child] is not required if 'there is a grave risk that return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation.'" *Golan v. Saada*, 596 U.S. 666, 670-71 (2022) (alterations omitted) (quoting Hague Convention, art. 13(*b*)). "A respondent

3

arguing that return would expose the child to a grave risk of harm must establish that this exception applies by 'clear and convincing evidence.'" *Golan*, 596 U.S. at 672 (quoting 22 U.S.C. § 9003(e)(2)(A)).

We conclude that the district court correctly ruled that Mother failed to establish by clear and convincing evidence that the children would be in grave risk of harm if they were returned to Wales. Put simply, the hypothetical scenario underlying Mother's grave risk argument on appeal is almost certainly unlikely to materialize because the district court ordered the return of the children to Wales only after "the parties have retained all of the sufficient documents needed to have the minor children returned to the United Kingdom." *Bohatikov v. Bohatikova*, No. 3:25-cv-00182-MOC-SCR (W.D.N.C., PACER No. 23 at 7). The district court also reasonably ordered Mother to produce the children's necessary immigration documents, and insofar as Mother claimed that she lost those documents, to cooperate with Father in obtaining new documents for the children.[2]

Finally, Mother criticizes the district court for failing to consider the well-settled defense. But that defense was not available to Mother because Father filed his petition for return within one year of Mother wrongfully removing the children from Wales. *See Miller v. Miller*, 240 F.3d 392, 402 n.14 (4th Cir. 2001) (holding that well-settled defense had no application when petition for return was filed within one year of wrongful removal).

---

[2] Mother also argues on appeal that the children will be at grave risk of psychological harm if forced to relocate again. For support, Mother relies on two opinion letters from the children's physician that she filed in the district court about two months after the district court entered its order. Even considering those letters, we are satisfied that Mother did not meet her burden on the grave risk defense.

4

Accordingly, we affirm the district court's order.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*